IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Edward R. Sun, M.D., | ) | C/A No.: 3:10-379-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Jackson & Coker Locum Tenens LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter comes before the court on the motion of defendant Jackson & Coker Locum Tenens LLC ("Jackson") to compel arbitration against plaintiff Edward R. Sun, M.D. ("Sun"). Dkt. No. 4. The parties have fully briefed the motion and the court heard oral argument at a hearing held on May 13, 2010, where the court took the motion under advisement. This order serves to announce the ruling of the court.

I. Background

Sun is a medical doctor who is board certified in diagnostic radiology and nuclear medicine. He entered into an agreement (the "Agreement") with Jackson on August 20, 2008, whereby Sun offered his services to Jackson's healthcare clients and Jackson promised to pay Sun a certain amount of money. Sun alleges that Jackson failed to properly submit time sheets to a Jackson client for whom Sun performed medical services and that the client terminated Sun without making payments Sun alleges he was entitled to receive. Sun filed suit against Jackson in the Richland County, South Carolina court of common pleas, and Jackson thereafter removed the suit to federal court on the basis of diversity jurisdiction.

Jackson moves to compel arbitration pursuant to a provision in the Agreement providing that "[a]ny controversy or claim arising out of or relating to the interpretation, enforcement or breach of this Agreement or the relationship between the parties hereto shall be resolved by binding arbitration" before the American Arbitration Association.

II.     Discussion

Jackson argues that the arbitration provision of the Agreement is enforceable under either Georgia law or federal law.  Sun contends that the arbitration provision is unenforceable as a matter of law because the parties failed to separately initial the arbitration provision, or alternatively, that the cost-shifting mechanism found in the Agreement is unconscionable.

    A.     The Georgia Arbitration Statute

The issue of whether an arbitration agreement exists between the parties is a question of state contract law. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). The Agreement provides that it should be governed by Georgia law; neither party challenges this choice-of-law provision.  Accordingly, the court will apply Georgia law in construing the Agreement.

 Relevant here is the Georgia Arbitration Code, Ga. Code Ann. §§ 9-9-1–18, which provides for disputes to be submitted to arbitration pursuant to a written agreement between the parties, Ga. Code Ann. § 9-9-2(c), though also provides for a number of conditions and exceptions to the enforcement of such an agreement. Id. § 9-9-2(c)(1)–(10).  Section 9-9-

1(c)(9) provides that an arbitration agreement relating to the "terms and conditions of employment" shall not be enforceable unless the clause is separately initialed by all signatories at the time of execution of the contract. The Agreement's arbitration clause is not separately initialed. However, the question remains as to whether the Agreement relates to the "terms and conditions of employment."

The courts of Georgia have had occasion to interpret the section 9-9-1(c)(9) exception a handful of times. In <u>Columbus Anesthesia Group, P.C. v. Kutzner</u>, the Georgia Court of Appeals considered an arbitration provision in a contract setting forth the terms and conditions of Dr. Kutzner's membership in Columbus Anesthesia Group ("CAG"). 459 S.E.2d 422 (Ga. App. 1995). The contract at issue in <u>Kutzner</u> specified Dr. Kutzner's benefits as an equity member, indicated an intent to form another corporation, established the hours he was to be on call, and allocated responsibilities between Dr. Kutzner and the other members of CAG. Dr. Kutzner filed suit and CAG moved to compel arbitration on the basis of section 9-9-1 and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2. The Georgia Court of Appeals found that because the contract set forth his interest in CAG, base salary, benefits, and hours to be devoted to CAG, the contract related to the terms of his employment and the initialing requirement of section 9-9-1(c)(9) applied. The seemingly broad reading of section 9-9-1(c)(9) in <u>Kutzner</u>, however, is reined back in <u>Joja Partners, LLC v. Abrams Properties, Inc.</u>, 585 S.E.2d 168, 172 (Ga. App. 2003).

In <u>Joja</u>, the Georgia Court of Appeals considered an agreement that required one party

3

to provide certain services relating to the administration, management, supervision, leasing, and disposition of the other party's real estate holdings. The contract explicitly indicated that the relationship between the parties was that of independent contractors. The analysis portion of the Jojo opinion commences with a recognition that the Georgia Arbitration Code must be strictly construed, Jojo, 585 S.E.2d at 170–71, and noted that the contract at issue was not an employment agreement, but rather an asset management contract between independent contractors. Id. at 171. The court then annunciated a more or less categorical test for section 9-9-1(c)(9), whereby it stated that construing "terms and conditions of employment" to include a contract between independent contractors "would violate our duty of strict construction relative to the Georgia Arbitration Code." Id. at 171–72. Jojo stands for the proposition that where "the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed . . . control." Id. at 171. Accordingly, absent a showing of control, an independent contractor cannot invoke the initialing requirement of section 9-9-1(c)(9) as a defense to arbitration.

The Agreement explicitly states that the relationship between the parties is that of independent contractors and not employer and employee. From reviewing the complaint and the agreement, Jackson does not appear to be employing Sun, but rather finding employment for him in exchange for consideration. Still, several of the Agreement provisions appear to affect the terms and conditions of the employment Jackson aspires to find for Sun. Namely,

the Agreement provides for travel arrangements; assistance in securing licences, insurance, and hospital privileges; and contains a two-year exclusivity arrangement that controls how Sun may go about seeking employment. However, where the Agreement defines the relationship between Sun and Jackson as independent contractors, Joja requires the court to determine whether Sun has made a showing of Jackson's control. Sun has made no such showing. The court finds that the Agreement evidences the parties' intent to arbitrate the matter, that section 9-9-2(c)(9) is inapplicable, and that Georgia law requires the case be submitted to arbitration. Because the court relies on Georgia law for its ruling, it will refrain from considering the applicability of the FAA.

B.     Unconscionability

Sun argues that the cost-shifting provision in the Agreement renders it unconscionable and seeks to have the Agreement declared invalid. In the alternative, Sun seeks to sever the offending provision. Georgia sets a high bar for establishing unconscionability. Its view is set for below:

> People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability.

NEC Tech. Inc. v. Nelson, 478 S.E.2d 769, 773 (Ga. 1996) (quoting Fotomat Corp. of Fla.

5

v. Chanda, 464 So.2d 626, 630 (Fla. Dist. Ct. App. 1985)). To "tip the scales in favor of unconscionability," Georgia law requires the circumstances to present "a certain quantum of procedural plus a certain quantum of substantive unconscionability." NEC, 478 S.E.2d at 773 n.6; White v. Wachovia Bank, N.A., 563 F. Supp. 2d 1358, 1370 (N.D. Ga. 2008). Factors to consider in determining procedural unconscionability include "the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." Id. at 771. "When considering substantive unconscionability, the court considers the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of risks between the parties, and whether the contract contravenes public policy." White, 563 F. Supp. 2d at 1370. Also of note, in Saturna v. Bickley Const. Co., the Georgia Court of Appeals found that lack of mutuality of remedy does not, on its own, render an arbitration provision unconscionable as a matter of law. 555 S.E.2d 825, 827 (Ga. App. 2001).

Here, the Agreement provides that Sun will be responsible for "reasonable expenses, including attorneys' fees," should Jackson prevail at arbitration, though sets forth no reciprocal obligation on the part of Jackson should Sun prevail. Thus, the court must determine whether the cost-shifting mechanism in the Agreement would cause a decent, fairminded person to "possess a profound sense of injustice from the enforcement" of the cost-shifting mechanism. NEC, 478 S.E.2d at 775. The court finds that it does not.

Nonmutual cost-shifting provisions are onerous contract terms to be sure, however, they are not per se unconscionable. See Realty Lenders, Inc. v. Levine, 649 S.E.2d 333, 337 (Ga. App. 2007) (indicating in dicta that nonmutual fee shifting is not unconscionable). The parties enjoy the freedom of contract and should be bound by their mutually agreed-upon terms absent some quantum of procedural unconscionability.

However, Sun's procedural unconscionability argument fares no better than his substantive one. Sun is a highly educated and sophisticated individual. The cost-shifting and arbitration provisions are readily intelligible and appear immediately above Sun's signature. Also, in the same vein as the procedural argument discussed above, having the loser pay costs is not violative of public policy where agreed to in advance by contract. Because Georgia law allows for lack of mutuality of remedy, and in recognition of the sophistication of the parties, the court declines to find the cost-shifting mechanism unconscionable.

III.   Conclusion

Based on the foregoing, the court hereby grants Jackson's motion to compel arbitration pursuant to the Agreement, as written. Dkt. No. 4. The case is hereby stayed for a period of one year and no longer.[1] The parties shall make a filing on the docket immediately upon the conclusion of arbitration.

---

1. This court has recently endured several cases where the parties went to arbitration and then failed to secure an arbitration date for more than one year. The court finds this unacceptable.

IT IS SO ORDERED.

May 13, 2010
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge